# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR KENT COUNTY

CHRISTOPHER KING, J.D. d/b/a    :

KINGCAST/MORTGAGE MOVIES,    :      C.A. No: K15C-03-028 RBY

                             :

      **Plaintiff,**              :

                             :

      **v.**                      :

                             :

**BETTY LOU McKENNA, HOLLY**    :

**MALONE and JOHN W. PARADEE,**    :

**ESQUIRE,**                      :

                             :

      **Defendants.**          :

*Submitted: June 23, 2015*
*Decided: June 29, 2015*

***Upon Consideration of Defendants' Motion for Judgment on the Pleadings***
***GRANTED***

***Upon Consideration of Plaintiff's Motion for Partial Judgment***
***DENIED***

***Upon Consideration of Plaintiff's Motion to Amend Complaint***
***GRANTED***

***Upon Consideration of Plaintiff's Motion for Reconsideration of Rule 155***
***Video Coverage***
***DENIED***

## ORDER

Christopher King, *Pro se.*

Joseph S. Shannon, Esquire, Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware for Defendants Betty Lou McKenna and Holly Malone.

Peter C. McGivney, Esquire, Elzufon Austin Tarlov & Mondell, P.A., Wilmington, Delaware for Defendant John W. Paradee, Esquire.

Young, J.

## SUMMARY

The controversy surrounding the contested election for Kent County Recorder of Deeds ("Recorder of Deeds") continues to engender litigation. Christopher King ("Plaintiff") a self-proclaimed web video journalist from Washington State, arrived on the scene of the election, apparently, to investigate allegedly slanderous comments made against one of the candidates for the position, La Mar Gunn. During the course of Plaintiff's reporting, he claims to have attempted to enter the office of the Recorder of Deeds, in order to videotape its interior. Plaintiff avers that Holly Malone ("Defendant Malone"), Betty Lou McKenna ("Defendant McKenna"), the Recorder of Deeds, and John Paradee, Esq. ("Defendant Paradee" and, together with Defendant McKenna and Defendant Malone, "Defendants") thwarted his videotaping efforts, expelling him from the office.

As a result of these alleged events, Plaintiff brings constitutional and tort claims against each of the Defendants. In response, Defendants have filed motions for judgment on the pleadings with respect to all claims. Even accepting all of the factual allegations in the Complaint as true, the Court finds, as a matter of law, that both the constitutional and tort claims asserted against Defendants are unsustainable. Therefore, the Court **GRANTS** Defendants' motions for judgment on the pleadings.

Plaintiff has, additionally, filed a motion to amend the Complaint, as well as and a motion for reconsideration. The motion to amend the Complaint seeks to add a second constitutional claim. Given the liberal standard for granting such motions, the Court obliges Plaintiff's request, permitting him to add the claim. However, this ruling has no effect on the Court's findings with respect to the original claims, as

3

discussed *infra.*

Plaintiff also seeks reconsideration of this Court's previous ruling, regarding the use of video recording in the Courtroom. The Court has already determined this issue. Pursuant to Administrative Directive 155, paragraph E, this is discretionary with the Court, which has declined video use in this matter. Plaintiff's motion fails to allege any legally recognizable justification for reconsideration of this matter. The motion is **DENIED**.

## FACTS AND PROCEDURES

On or about November 25, 2014, Plaintiff, a web video journalist, attempted to enter the offices of the Recorder of Deeds, filming its interior with a video camera. Plaintiff claims that his purpose was to investigate purported allegations made against La Mar Gunn, a candidate for the Recorder of Deeds position, that he had engaged in voter fraud. Upon arriving, Plaintiff avers that his journalistic endeavors were met by the opposition of Defendant Malone, who informed him that administrative policy prevented the video recording of the offices. Plaintiff further alleges that Defendant Malone made two phone calls: one to Defendant McKenna, and one to Defendant Paradee, presumably, regarding this issue. Plaintiff alleges that he was told he would be arrested if he persisted in his efforts to videotape the offices.

By letter dated December 15, 2014, Mary Sherlock, Esq., a Kent County Row Office Attorney, responded to Plaintiff's inquiry regarding whether there was a policy forbidding video recording of the Recorder of Deeds office. Mary Sherlock, Esq. informed Plaintiff that there was no such policy.

Following receipt of this letter, in February of 2015, Plaintiff filed a Complaint

with the Kent County Court of Common Pleas, alleging constitutional and tort claims against Defendants. The Court of Common Pleas transferred Plaintiff's case to this Court on March 25, 2015.

## DISCUSSION

### I. Plaintiff's Motion to Amend the Complaint

By his Complaint, Plaintiff brings three claims against each of the Defendants: 1) claim for negligent infliction of emotional distress; 2) claim for intentional infliction of emotional distress; and 3) constitutional claim alleging violation of the U.S. First Amendment, and of Article 1 §5 of the Delaware Constitution, known as the Delaware Freedom of the Press. By motion dated June 1, 2015, Plaintiff requests leave to file an Amended Complaint. In essence, Plaintiff asks solely to add a second constitutional claim, alleging an equal protection violation.

Pursuant to Superior Court Civil Rule 15, such motions are to be granted liberally.[1] Only in the event there is prejudice to Defendant, shall such motions be denied.[2] Defendants have not asserted, and the Court does not find, any potential prejudice in permitting Plaintiff to plead an additional constitutional claim. Therefore, Plaintiff's motion to amend the Complaint is **GRANTED**. However, as discussed *infra*, the Court will, nonetheless, proceed with disposition of the claims currently pleaded in the Complaint, and addressed by the parties' pending filings.

---

[1] Super. Ct. Civ. R. 15 (motion to amend "shall be freely given when justice so requires").

[2] *Homsey Architects, Inc. v. Harry David Zutz Ins., Inc.,* 2000 WL 973285, at *6 (Del. Super. Ct. May 25, 2000).

## II. Defendants' Motion for Judgment on the Pleadings & Plaintiff's Partial Summary Judgment Motion

### a. First Amendment Claim[3]

Plaintiff's First Amendment claim is premised on his alleged attempt to enter and videotape the interior of the Recorder of Deeds office.[4] Plaintiff's motivation was, ostensibly, to interview Defendant McKenna, or some other employee of the Recorder of Deeds, regarding allegations of voter fraud made against La Mar Gunn, a candidate for that office.[5] Plaintiff holds himself out to be a type of guerrilla-style journalist, using the medium of video reporting, which he then uploads to the Internet.

According to Plaintiff, his efforts in collecting information regarding the purported allegations of voter fraud were thwarted by the actions of each Defendant. More precisely, Plaintiff alleges that Defendant Malone harshly rebuked his journalistic enterprise, informing him of an administrative policy, which prohibited the videotaping of the office interior. Plaintiff further claims that Malone's prohibitory statements were made with the consultation of Defendant McKenna and

---

[3] Plaintiff and Defendants have filed separate dispositive motions with regard to Plaintiff's First Amendment claim. The Court addresses these motions in tandem.

[4] For all intents and purposes, the analysis under the U.S. First Amendment and the Delaware Freedom of the Press is the same. *Gannet Co. v. State,* 571 A.2d 735, 749 n.9 (Del. 1989). Therefore, the Court will refer to the claims as "First Amendment claim" for ease of readability. In addition, the U.S. First Amendment applies to Delaware by incorporation through the U.S. Fourteenth Amendment. *Schneider v. New Jersey*, 308 U.S. 147 (1939).

[5] The Court notes that in subsequent filings, Plaintiff avers that his purpose at the Recorder of Deeds was to uncover evidence of interstate mortgage fraud. However, as this Court considers these matters under a judgment on the pleadings standard, the Court adheres to the facts as set out by Plaintiff in the Complaint.

Defendant Paradee, via telephone conversations. In addition, Plaintiff contends that there was no such policy in place, and that Malone's statements, arguably made at the behest of McKenna and Paradee, were meant to mislead.[6]

Plaintiff contends that he had a constitutional right to videotape the offices of the Recorder of Deeds. That he was prevented from doing so is asserted to be a violation of this right, as per 42 U.S.C. § 1983. Specifically, Plaintiff argues that Defendants have violated the First Amendment to the U.S. Constitution, and the Delaware Freedom of the Press. In response, Defendants move for judgment on the pleadings.[7]

"A motion for judgment on the pleadings admits, for the purposes of the motion, the allegations of the opposing party's pleadings but contends that they are insufficient as a matter of law."[8] Where there is any question of material fact, such motions must not be granted, as such motions raise, inherently, only questions of law.[9] "It is the Plaintiff's burden to establish the existence of a genuine issue of material fact."[10] Viewing the facts, by necessity, from Plaintiff's perspective, the

---

[6] To his Complaint, Plaintiff has attached a letter received from Mary Sherlock, a Kent County Row Office Attorney, informing Plaintiff that no official policy exists prohibiting the videotaping of the office interior.

[7] Plaintiff, by separate motion, moves for partial summary judgment of his First Amendment claim. As discussed *infra*, the Court resolves the matter concerning this claim as a judgment on the pleadings.

[8] *Dickerson v. Phillips*, 2012 WL 2236709, at *1 (Del. Super. Ct. Jun. 13, 2012).

[9] *Id.*

[10] *Id.*

Court is presented with the following question: As a matter of law, did Defendants impinge upon Plaintiff's First Amendment right, by denying him the ability to film inside the Recorder of Deeds office?

The Court, first, addresses this question with respect to Defendant Paradee. As a matter of law, in order for there to be a violation of the First Amendment, there must be some form of state action.[11] Accepting the averments in Plaintiff's Complaint as true for purposes of his motion, Defendant Paradee argues that he was not a state actor. As articulated in Plaintiff's Complaint, Defendant Paradee was retained by Defendant McKenna to represent her in then-pending litigation, surrounding the Kent County Recorder of Deeds election.[12] However, "[r]epresenting a client is not, by virtue of being an officer of the court, a state actor under color of law."[13] Defendant McKenna's happening to be the Recorder of Deeds is the only connection Defendant Paradee is alleged to have had to the Delaware state government in Plaintiff's Complaint. Interestingly, Plaintiff himself states, "[Defendant Paradee] is not a State Actor..."[14] Based solely upon the facts presented in the Complaint, and accepting all of them as true, the Court finds Defendant Paradee not to have been a state actor. As

---

[11] *Doe v. Cape Henlopen School Dist.*, 759 F.Supp.2d 522, 530 (D. Del. 2011).

[12] Complaint, at ¶ 5.

[13] *Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981)(internal quotations omitted); *see also Wilkerson v. Sullivan*, 593 F.Supp.2d 689, 691 (D. Del. 2009) ("[n]or is a private attorney considered a state actor. To act under color of law a defendant must be clothed with the authority of state law")(internal quotations omitted).

[14] Complaint, at ¶ 5.

a matter of law, therefore, Defendant Paradee cannot have violated *any* constitutional rights of Plaintiff. Defendant Paradee's motion for judgment on the pleadings regarding the First Amendment claim is **GRANTED.**

As concerns the remaining Defendants (hereinafter, "State Actor Defendants"), the Court must determine into what First Amendment protection the alleged factual circumstance of denied video recording falls. To begin, the First Amendment provides that "Congress...shall make no law...abridging the freedom of speech, or of the press." "This means that, with a few, carefully crafted exceptions, the government can neither interfere with anyone who is attempting to speak or publish nor punish him or her thereafter for having done so."[15] In the parties' respective recitation of case law, two competing versions of this First Amendment protection arise. Although not articulated as such by Plaintiff, the cases to which Plaintiff cites would view his claim as a restriction on speech in a public forum.[16] As such, the analysis would be whether the State Actor Defendants' conduct was a permissible time, place and manner restriction on speech.[17] The State Actor Defendants, on the other hand, following the view of the U.S. Third Circuit Court of Appeals, present this as an issue of a

---

[15] *Capital Cities Media, Inc. v. Chester*, 797 F.2d 1164, 1167 (3d Cir.1986) (*citing Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *N.Y. Times v. U.S.,* 403 U.S. 713 (1971); *N.Y. Times v. Sullivan*, 376 U.S. 254 (1964); *Near v. Minnesota ex rel Olson*, 283 U.S. 697 (1931)).

[16] *See e.g., Smith v. City of Cumming,* 212 F.3d 1332 (11th Cir. 2000) (court analyzed restriction on Plaintiff's ability to videotape police activities as a restriction on speech in a public forum); *Gilk v. Cunniffe,* 655 F.3d 78 (1st Cir. 2011) (same).

[17] *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

constitutional right to access information.[18]

The Court deems State Actor Defendants' citation to *Whiteland Woods, L.P. v. Township of West Whiteland*, particularly instructive.[19] In that case, the Third Circuit was faced with the similar factual situation of a Plaintiff denied video recording privileges at a public space.[20] Specifically, the *Whiteland Woods* Plaintiff had attempted to record a planning commission meeting.[21] Although recognizing that other jurisdictions, as well as the court below, had analyzed the video recording of public events/areas under the speech forum analysis, the Third Circuit was "not convinced that forum analysis is necessary to resolve such restrictions on the right of access."[22] The *Whiteland Woods* Court found that the forum approach did not truly cover the video recording of public events, as, at its core, such analysis applies to "expressive or speech activity."[23] In preventing the *Whiteland Woods* Plaintiff from videotaping the planning commission meeting, the Third Circuit reasoned that Defendants had not "interfered with [Plaintiff's] speech or other expressive

---

[18] *See e.g., Whiteland Woods L.P. v. Township of West Whiteland*, 193 F.3d 177 (3d Cir. 1999); *Capital Cities*, 797 F.2d 1164.

[19] 193 F.3d 177.

[20] *Id.*

[21] *Id.*

[22] *Id.* at 182-183.

[23] *Id.* at 183.

activity."[24] Instead, "the alleged constitutional violation consisted of a restriction on [Plaintiff's] right to receive and record information."[25] Much the same can be said of Plaintiff in the case at bar's purported constitutional affront. Plaintiff's attempt to videotape the interior of the Recorder of Deed's office was not, in and of itself, expressive activity. Rather, Plaintiff was gathering information to be used in a later form of speech – apparently an internet video. This is, therefore, an issue of the right to access government information under the guise of the First Amendment.

Although the U.S. Supreme Court has recognized that "news gathering is not without First Amendment protections," this "in no sense implie[s] a constitutional right of access to news sources."[26] Stated more precisely, "[t]he public's interest in knowing about its government is protected by the guarantee of a Free Press, but the protection is indirect. *The Constitution itself is neither a Freedom of Information Act*

---

[24] *Id.*

[25] *Id.; see also D'Amario v. Providence Civic Ctr Authority*, 639 F.Supp.1538, 1541 (D.R.I. 1986) ("the issue before the court is *not* whether the plaintiff may be restricted from communicating or displaying information he has already garnered. His problem is precisely the opposite: he has come away empty-handed, having been denied license to let his camera rove at will. Seen in its true perspective, the issue is whether a photographer (or photojournalist) may have special rights of access to information, that is, to subjects which he desires to photograph. The distinction is a critical one")(internal quotations omitted)(emphasis added); *Westmoreland v. Columbia Broad. Sys., Inc,* 752 F.2d 16, 21-22 (2d Cir. 1984)("[w]hatever public forum interest may exist in litigation, that interest is clearly a *speaker's interest*, *not an interest in access* to the courtroom. Because of the ability of neither General Westmoreland nor CBS to express views at trial is altered by the presence or absence of television cameras, [the] public forum argument is, by itself, inapposite")(emphasis added).

[26] *Houchins v. KQED, Inc.*, 438 U.S. 1, 10 (1978).

*nor an Official Secrets Act*."[27] Importantly, neither does the press have a greater right to access government information.[28] The reasoning behind these holdings is the premise that the judicial branch is ill equipped to make case-by-case determinations, as to which information the public is entitled.[29] The Supreme Court feared that to find otherwise would result in a series of inconsistent rulings by various different courts.[30] Instead, the Supreme Court concluded that "the choice as to the most effective and appropriate method [for disclosure of government information] is a policy decision to be resolved by legislative decision."[31] Further supporting its point, the Supreme Court referenced "The Freedom of Information Act" as an example that "[f]orces and factors other than the Constitution must determine what government held data are to be made available to the public."[32]

Despite announcing that, as a general rule, there is no First Amendment guarantee of access to all government information, the Supreme Court has, on

---

[27] *Id.*, at 14 (emphasis added).

[28] *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) ("the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally").

[29] *Houchins*, 438 U.S. at 14 ("[b]ecause the Constitution affords no guidelines, absent statutory standards, hundreds of judges would...be at large to fashion ad hoc standards, individual cases, according to their own ideas of what seems desirable or expedient")(internal quotations omitted).

[30] *Id.*

[31] *Id.*, at 13.

[32] *Id.,* at 13 n.7.

occasion, determined that the First Amendment does protect both the public's and the press's right to compel *certain* types information.[33] The Third Circuit in *Capital Cities Media, Inc. v. Chester*, nicely and succinctly summarized the two part test for recognition of a First Amendment right of access as follows: 1) "access [to the information in question] has traditionally been afforded to the public" and 2) "that access plays a significant positive role in the functioning of the particular process in question."[34]

Thus far, the U.S. Supreme Court has applied this test only to situations involving access to certain judicial proceedings.[35] The Third Circuit, however, has considered this issue as concerns video reporting, in the aforementioned *Whiteland Woods,* which this Court, again, finds of great aid.[36] To this two part test, the Third Circuit, in the context of video recording, added the consideration of alternative

---

[33] *See e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980)(holding that public has First Amendment right of access to criminal trials); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1984) (holding that public has First Amendment right of access to trials involving minor victims of sexual offenses); )*Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) (holding that public has First Amendment right of access to voir dire proceedings); *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147 (2004) (holding that public has First Amendment right of access to preliminary hearings).

[34] *Capital Cities*, 797 F.2d at 1174 (*citing Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 7-8 (1986)).

[35] *See e.g., Richmond Newspapers* 448 U.S.; *Globe Newspaper Co.,* 457 U.S. 596; *Press-Enterprise Co.*, 464 U.S. 501; *El Vocero*, 508 U.S. 147.

[36] 193 F.3d 177.

means of access.[37] That is, even if access has been historically permitted, and is of functional significance, the government may, in some instances, still restrict this access, without impinging upon First Amendment protections.[38] Although the *Whiteland Woods* Plaintiff may have been prohibited from videotaping the planning commission meeting, he was not "prohibit[ed] from attending meetings or...gathering information by other means...Spectators were free to take notes, use audio recording devices, or even stenographic recording."[39] Further, the Court did not find an "essential nexus between the right of access and the right to videotape."[40] As long as access to the information is available in some form, the First Amendment remains untarnished.

Applying this constitutional analysis to the Plaintiff in this matter, it's clear from Plaintiff's pleading that Plaintiff had no First Amendment right to film the Recorder of Deeds office. Indeed, even assuming *arguendo* that Plaintiff were constitutionally protected, his access was not so restricted as to be deemed a

---

[37] *Id.,* at 183 ("[t]he First Amendment does not require states to accommodate every potential method of recording its proceedings, particularly where the public is granted *alternative means* of compiling a comprehensive record")(emphasis added)(*citing Combined Communicating Corp. v. Finesilver*, 672 F.2d 818 (10th Cir. 1982) (upholding ban on television coverage of court-ordered negotiations where member of the press were permitted to attend the meetings and take notes); *Garrett v. Estelle*, 556 F.2d 1274 (5th Cir. 1977)(upholding prison's prohibition on filming execution because there were other methods of informing the public of the execution); *Johnson v. Adams*, 629 F.Supp. 1563(E.D. Tex. 1986)(holding county commissioners may ban video recording of meetings where audiotaping is permitted)).

[38] *Whiteland Woods*, 193 F.3d at 183.

[39] *Id.*

[40] *Id.*

14

constitutional violation. As an initial matter, Plaintiff makes no argument for the "existence of a tradition of public access to" the interior offices of the Recorder of Deeds.[41] Furthermore, the Plaintiff does not contend that the function of the Recorder of Deeds is positively promoted by granting access to its interior offices. Thus, the Court finds that filming the employees of the Recorder of Deeds in their cubicles or at the water cooler fails to create a database of property ownership, among other raisons d'etre. "As [Plaintiff] cannot satisfy both tests of [historical access and function], a qualified First Amendment right of public access does not attach."[42]

Assuming for the moment, that Plaintiff had demonstrated that public access to the Recorder of Deeds office has been historically permitted, and that this access furthers the Recorder of Deeds' functions, the Court would still determine the State Actor Defendants' conduct not to be in violation of the First Amendment. The Court recognizes that with respect to, for example, the various property records found in the Recorder of Deeds office, the argument can be made that such documents have been both historically open to the public, and that the function of the Recorder of Deeds is to compile and make these items available for public use. However, even if this position had been asserted by Plaintiff, and the Court were to accept that as a fact, Plaintiff cannot be said to have been denied access to these records. Although the State Actor Defendants' effort to enforce a nonexistent policy would have prevented Plaintiff from videotaping his review of the records, no indication or allegation exists

---

[41] *Capital Cities*, 797 F.24 at 1175.

[42] *Id.*, at 1176 (*citing Press-Enterprise,* 478 U.S. at 7-8)(internal quotations omitted).

that Plaintiff would not have been able to access the records by alternative means. For example, Plaintiff could have been able to go through the numerous documents held in the Recorder of Deeds office, making notations either on a notepad or his tablet computer of their contents. Additionally, it is possible that a computerized scan or a photocopy of these documents would have been available to him. The point of the matter is, as the *Whiteland Woods* Court noted, there is no "essential nexus between the right of access and the right to videotape."[43] Plaintiff had ample alternative options to access the documents held by the Recorder of Deeds. That he was not permitted to *videotape* this access is not significant.

In formulating his position on the First Amendment right to videotape the Recorder of Deeds office, Plaintiff repeatedly cites to the U.S. District Court for the District of Rhode Island's decision in *Cirelli v. Town of Johnston School Dist.*[44] Plaintiff vigorously asserts that *Cirelli* puts into question the holding of *Whiteland Woods*. Although (unlike *Whiteland Woods*) *Cirelli* has no precedential impact on a Delaware court, an analysis of it demonstrates that it is inapposite to the issues in the case at bar. Briefly, *Cirelli* involved the prohibition of a teacher filming alleged threats to the health and safety of the students and other staff of the public school, at which she was employed.[45] The *Cirelli* Court held that, absent a considerable disruption to "the government's interest in efficient performance of its duties," the

---

[43] 193 F.3d at 183.

[44] 897 F.Supp. 663 (1995).

[45] *Id.*

16

"First Amendment right of a *government employee* to comment on matters of public concern" may not be restricted.[46] The Court notes that the holding of *Cirelli,* and the authority on which it relies, presupposes that the Plaintiff alleging the violation of the First Amendment is a *government employee.* Based upon the pleadings alone, there is no indication that Plaintiff was, at the time of the alleged restriction, an employee of the State of Delaware. Stated simply, Plaintiff does not fall into this narrow First Amendment protection.[47]

Accepting all of the factual allegations in Plaintiff's Complaint as true, the Court finds, that as a matter of law, State Actor Defendants have not violated the Plaintiff's First Amendment right to access government information. Within the context of video recording the offices of the Recorder of Deeds, either Plaintiff had no right to access, or, assuming that he did, Plaintiff had multiple alternative modes

---

[46] *Id.,* at 665 (emphasis added)(*citing Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)).

[47] The Court further notes Plaintiff's citation to a number of extra-jurisdictional cases whose holdings, although involving a video reporter attempting to film a public event, were *not* based upon First Amendment analysis: *Iacobucci v. Boulter*, 1997 WL 258494, at *1 (D. Mass. Mar. 26, 1997)(holding rested upon whether Officer had probable cause to arrest video reporter for recording public event, implicating the Fourth Amendment); *Tarus v. Borough of Pine Hill*, 916 A.2d 1036 (N.J. 2007) (holding found that video reporter had right to access public event because of *New Jersey common law* permitting public access to public events)(emphasis added); *Peloquin v. Arsenault*, 162 Misc. 2d 306 (N.Y. Sup. Ct. 1994) (finding that ban on video recording of Village Board's meetings violated *New York State Open Meetings Law*); *Matter of Csorny v. Shoreham Wading Riv. Cent. School Dist.*, 305 A.D. 2d 83, 91 (N.Y. App. Div. 2003) (finding that ban on video recording by public school district violated *New York State Open Meetings Law*. However in so doing, court recognized that the First Amendment does not "guarantee the right to videotape government meetings")(*citing Whiteland Woods*, 193 F.3d 177)).Needless to say, these cases are *all* inapplicable to the First Amendment question presently before the Court.

of gathering legitimate information. Therefore, the Court **GRANTS** the State Actor Defendants' motion for judgment on the pleadings, with respect to Plaintiff's First Amendment claims.[48]

### b. **Intentional/Negligent Infliction of Emotional Distress Claims**[49]

Defendants move for judgment on the pleadings of Plaintiff's intentional and negligent infliction of emotional distress claims. As previously noted, the Court accepts all allegations in Plaintiff's Complaint as true.[50] The Court reviews the claims' sufficiency as a matter of law.[51]

The Court considers the motion of State Actor Defendants first. The State Actor Defendants argue that, as a matter of law, Plaintiff cannot assert claims of intentional or negligent infliction of emotional distress against them, as they are protected by Delaware's County and Municipal Tort Claims Act, 10 *Del. C.* § 4010, *et seq.* ("Tort Claims Act"). The Torts Claims Act provides "immunity for all government entities and their employees with certain narrow exceptions."[52] This

---

[48] The Court, thus, for the same reasons, **DENIES** Plaintiff's partial summary judgment motion on the identical matter.

[49] Only Defendants have filed arguments concerning the Intentional and Negligent Infliction of Emotional Distress claims.

[50] *Dickerson*, 2012 WL 2236709 at *1.

[51] *Id.*

[52] *Sekscinski v. Harris,* 2006 WL 509541, at *3 (Del. Super. Ct. Jan. 18, 2006); *see also* 10 *Del. C.* § 4011(a) stating in relevant part: "all governmental entities and their employees shall be immune from suit on any and all tort claims..."

applies both to torts involving negligence and to intentional torts.[53] The Court finds that the State Actor Defendants' status as government employees is not in dispute.[54] Therefore, unless either Defendant fits into one of the exceptions to the Tort Claim Act's immunity, Plaintiff's claims are statutorily barred.

The Tort Claims Act contains two exceptions to general tort immunity, found in 10 *Del. C.* § 4011 and § 4012. Section 4011(c) provides in relevant part:

> An employee may be personally liable for acts or omissions causing property damage, bodily injury or death in instances in which the governmental entity is immune under this section, but only for those acts which were not performed within the scope of employment or which were performed with wanton negligence or willful and malicious intent.[55]

The Court deems the § 4011(c) exception most relevant to Plaintiff's claim of intentional infliction of emotional distress. In Delaware, the Restatement (Second) of Tort's definition of this cause of action controls: "[o]ne who by extreme and outrageous conduct *intentionally* or recklessly causes severe emotional distress to another is subject to liability for such emotional distress."[56] Plaintiff asserts that he is suing the State Actor Defendants in both their "official" and "personal"

---

[53] *Willis v. City of Rehoboth Beach*, 2005 WL 1953208, at *3 (Del. Super. Ct. Jun. 24, 2005) ("[Tort Claims Act] makes no distinction of tort claims for damages based upon the state of mind of the torfeasor").

[54] Indeed, in alleging constitutional violations by Defendant Malone and Defendant McKenna, Plaintiff, by necessity, admits to their government employment.

[55] 10 *Del. C.* § 4011(c).

[56] *Doe v. Widley*, 2012 WL 1408879, at *4 (Del. Super. Ct. Mar. 29, 2012)(emphasis added).

capacities.[57] Section 4011(c), permits the intentional infliction of emotional distress claim only if the State Actor Defendants were acting in their *personal* capacities (implying conduct outside of scope of employment), or, if in their *official* capacities, then with the requisite *intent*. However, Delaware courts have held that the "bodily injury" contemplated by § 4011(c) does not include emotional distress.[58] Plaintiff has pled no other injury. Thus, the § 4011(c) exception to the Tort Claims Act's immunity does not apply to Plaintiff's claim for intentional infliction of emotional distress against the State Actor Defendants.

The same can be said of the § 4012 exceptions. Section 4012 concerns the *negligent* acts of government employees, providing that, with a few limited exceptions, such acts are immune from liability.[59] To the extent Plaintiff's claim for negligent infliction of emotional distress might proceed, it would have to be covered

---

[57] Complaint, at ¶ 5-6.

[58] *Dickerson*, 2012 WL 2236709 at *2 ("[i]t is well established allegations of emotional distress do not amount to bodily injury for purposes of [§ 4011(c)]"); *McCaffrey v. City of Wilmington*, 2012 WL 3518119, at *3 (Del. Super. Ct. Aug. 9, 2012)("this Court...reaffirm[s] the principle that emotional distress does not constitute bodily injury for purposes of the exception to municipal immunity under Section 4011(c)").

[59] *Sekscinski,* 2006 WL 509541 at *3. Exceptions limited to governmental entity: "1)in its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary; 2) in the construction, operation or maintenance of any public building or appurtenances thereto, except as to historic sites or buildings, structures, facilities or equipment designed for use primarily by the public in connection with public outdoor recreation; 3) in the sudden and accidental discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines and toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water" 10 *Del. C*. § 4012.

by one of these exceptions. However, "none of those exceptions is applicable in the case at issue."[60] As a matter of law, Plaintiff's claim of negligent infliction of emotional distress against the State Actor Defendants is barred by the Tort Claims Act. State Actor Defendants' motion is **GRANTED.**

The Court next turns to the negligent and intentional infliction of emotional distress claims asserted against Defendant Paradee. As it has been established that Paradee is not a government employee, the Tort Claims Act does not protect him from liability to Plaintiff. The Court, therefore, proceeds with the review of Plaintiff's claims.

Plaintiff's emotional distress claim against Defendant Paradee is premised on the allegation that Paradee either advised or ordered Malone and/or McKenna to expel Plaintiff from the Recorder of Deeds office. Although thinly formulated, the Court understands the Plaintiff to aver that he suffered emotional distress, as a result of Defendant Paradee's having prevented Plaintiff from videotaping the interior of the office.

As a starting point, the Court can expeditiously dispose of Plaintiff's negligent infliction of emotional distress claim. In Delaware "[n]egligent...emotional distress requires some physical manifestation of the emotional harm caused."[61] Where "[plaintiff] fail[s] to offer any proof or even allege with specificity what type of

---

[60] *Sekscinski,* 2006 WL 509541 at *3.

[61] *Pekala v. E.I. duPont de Nemours Co., Inc.,* 2006 WL 106275, at *4 n.12 (Del. Super. Ct. Mar. 31, 2006).

physical injury he suffered" the claim must, by necessity, fail.[62] Here, where Plaintiff has merely alleged suffering emotional distress, without any reference to physical manifestations, the Court finds, as a matter of law, that Defendant Paradee cannot be liable to Plaintiff on this claim as Plaintiff has pled it.

Where "no claim of physical harm [is made] in the complaint, the conduct causing emotional distress must...be established to be intentional and outrageous."[63] This leads the Court to Plaintiff's claim of intentional infliction of emotional distress against Defendant Paradee. As has been stated, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress."[64] "Outrageous conduct is considered conduct with exceeds the bounds of decency and is regarded as intolerable in a civilized community."[65] "Severe emotional distress occurs where distress inflicted is so severe that no reasonable man could be expected to endure it."[66]

Based upon the sparseness of facts alleged by Plaintiff concerning any outrageous conduct of Defendant Paradee, or the severe emotional distress that Plaintiff suffered, this Court must grant Defendant Paradee's motion for judgment on the pleadings on this claim. The Court is further convinced of the necessity to do so,

---

[62] *Waterhouse v. Hollingsworth*, 2010 WL 8250801, at *6 (Del. Super. Ct. May 3, 2010).

[63] *Pekala,* 2006 WL 106275 at *4.

[64] *Doe*, 2012 WL 1408879 at *4.

[65] *Pekala,* 2006 WL 106275 at *4 (internal quotations omitted).

[66] *Doe*, 2012 WL 1408879 at *4 (internal quotations omitted).

given a prior Delaware court's description of the extent of outrageousness that Defendant Paradee's actions would have to reach, in order to justify liability:

> It is not enough that a Defendant acted with tortuous or criminal intent, intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation that would entitle the plaintiff to punitive damages under another tort.[67]

Once more, following the motion for judgment on the pleadings standard, assuming all Plaintiff's factual allegations to be true, preventing Plaintiff from videotaping cannot reach the level of extreme and outrageous conduct contemplated by the above description. Thus, as a matter of law, Defendant Paradee is not liable to Plaintiff for intentional infliction of emotional distress. The Court **GRANTS** Defendant Paradee's motion as to both claims of emotional distress.

## III. Plaintiff's Motion For Reconsideration

Plaintiff moves for reconsideration of this Court's prior denial of video recording privileges during a discovery hearing before Commissioner Freud. Plaintiff's argument, in essence, is that this Court misinterpreted Supreme Court Administrative Directive No. 155, concerning the use of electronic media within the Courtroom.

In Delaware, the law concerning motions for reargument is well settled: "[a] motion for reargument will be denied unless the Court has overlooked controlling precedent or legal principles, or the Court has misapprehended the law or facts such

---

[67] *Pekala,* 2006 WL 106275 at *5 (citing *Thomas v. Hartford Mut. Ins. Co.,* 2004 WL 1102362, at *3 (Del. Super. Ct. Apr. 7, 2004)).

as would have changed the outcome of the underlying decision."[68] Furthermore, "[a] motion for reargument is not intended to rehash the arguments already decided by the Court."[69]

The Court's position regarding Supreme Court Administrative Directive No. 155 remains the same. By this Directive, "trial judges in their discretion" retain the ability to "permit electronic media coverage in certain proceedings."[70] This Court chose not to allow the electronic media coverage at issue. The Court has neither misapprehended the law nor overlooked controlling precedent. Plaintiff is merely "rehashing arguments already decided by the Court."[71] The Court **DENIES** Plaintiff's motion for reconsideration.

The Court notes that, couched within the motion for reconsideration, there is an allegation that Plaintiff's likeness was posted throughout the Kent County Courthouse. Plaintiff further asserts that he filed a "Public Information" request with the Prothonotary's office.[72] Simply as a matter of observation, the Court is unaware of any images of Plaintiff being displayed within the Courthouse. In any event, this is not the proper filing by which to raise either concern. Thus, the Court takes no

---

[68] *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Ct. Jan. 31, 2006) (internal quotations omitted).

[69] *Id.*, at *2.

[70] *See* Ex. 1 to Defendants' Joint Answer & Opposition to Plaintiff's Motion for Reconsideration.

[71] *Kennedy*, 2006 WL 488590 at *2.

[72] Plaintiff's Motion for Reconsideration, at ¶ I.

action.[73]

## CONCLUSION

For the foregoing reasons the Court: 1) **GRANTS** Plaintiff's motion to amend the Complaint; 2) **GRANTS** Defendants' motions for judgment on the pleadings; 3) **DENIES** Plaintiff's motion for partial summary judgment; and 4) **DENIES** Plaintiff's motion for reconsideration.

**IT IS SO ORDERED**.


        /s/ Robert B. Young        

               J.


RBY/lmc
**File & ServeXpress**
oc:   Prothonotary
cc:   Counsel
       Christopher King (*via certified mail*)
       Opinion Distribution
       File

---

[73] Into this already over-saturated motion for reconsideration, Defendant reasserts his prior position regarding a stay of discovery pending resolution of dispositive motions. Looking past the fact that this request's placement within this filing was improper, the Court has already made its decision regarding the stay of discovery pending disposition of the pending motions . *See* this Court's Order dated May 21, 2015. The ruling stands.